United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
March 8, 2024
Lyle W. Cayce
Clerk

No. 23-20180

_____

DISH Network, L.L.C.,

          *Plaintiff—Appellant*,

versus

Bassam Elahmad, *also known as* Bassem El Ahmad, *doing business as* Elahmad.com,

          *Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-581

_____

Before Willett, Wilson, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

    DISH Network, L.L.C., appeals the district court's dismissal of its case for lack of personal jurisdiction. We REVERSE and REMAND.

I

    DISH Network, a Colorado company, is the fourth-largest pay-television provider in the United States. It provides copyrighted

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

programming to millions of subscribers nationwide. DISH is also one of the largest providers of international television channels, offering more than 400 channels in 27 languages. This dispute concerns its Arabic language channels.

In 2020, DISH sued Bassam Elahmad, a resident of Germany doing business as Elahmad.com, for contributory copyright infringement, alleging that Elahmad violated DISH's rights under the Copyright Act, 17 U.S.C. § 501, by providing access to the Arabic language channels for which DISH holds the "exclusive rights to distribute and publicly perform in the United States." DISH alleged that Elahmad "searches the Internet for unauthorized sources" of DISH's Arabic channels, uploads and embeds links to that content on his website, and organizes them into categories based on their country to make it easy for users to locate and watch the channels. When users click on the links to the channels, "they instantaneously receive unauthorized streams" of the content on Elahmad's website.

DISH alleged that Elahmad profits from his website by using U.S. marketing companies that advertise for U.S. businesses on his website. To attract more users, Elahmad allegedly promotes his website as providing free access to "Arab channels in America" on social media sites such as Facebook, Instagram, and Pinterest. DISH claims that the website is worth approximately $1.8 million and averages more than 2 million views per month, with almost 30% of those views coming from the United States.

Elahmad's website has a Digital Millennium Copyright Act (DMCA) page that says, "[W]e don't [h]ost any of these videos embedded here," "[o]ur mission here, is to organize those videos and to make your search . . . easier," and "[w]e simply link to the video."

After learning of Elahmad's conduct, DISH contacted Elahmad through the email address provided on his website and asked him to stop providing United States users with access to DISH's copyrighted content.

No. 23-20180

Elahmad refused. Since February 2014, DISH alleges that it has sent Elahmad at least 62 notices of copyright infringement.

In the district court proceedings, DISH properly served Elahmad, but he did not file an answer or otherwise participate in the suit. DISH moved for default judgment. The district court denied the motion without prejudice, concluding that the court could not exercise personal jurisdiction over Elahmad because DISH did not allege or offer any evidence that Elahmad had any connections with Texas. DISH filed an amended motion. Addressing the court's concern about personal jurisdiction, DISH argued that the district court had specific personal jurisdiction over Elahmad under Federal Rule of Civil Procedure 4(k)(2) based on Elahmad's contacts with the United States as a whole. But the district court again concluded that it lacked personal jurisdiction over Elahmad because DISH did not show that Elahmad specifically targeted *Texas*. The district court faulted DISH for failing to "mention 'Texas' at all." Accordingly, the district court denied DISH's amended motion for a default judgment and dismissed its complaint without prejudice.

DISH timely appealed. We have jurisdiction over this appeal under 28 U.S.C. § 1291. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 590 (2020) ("Orders denying a plaintiff the opportunity to seek relief in its preferred forum often qualify as final and immediately appealable, though they leave the plaintiff free to sue elsewhere. Notably, dismissal for want of personal jurisdiction ranks as a final decision."); *16 Front St., L.L.C. v. Miss. Silicon, L.L.C.*, 886 F.3d 549, 561 (5th Cir. 2018).

II

We review de novo a district court's dismissal for lack of personal jurisdiction. *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 231

(5th Cir. 2022) (en banc); *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2004).

Because the district court ruled on personal jurisdiction without an evidentiary hearing, DISH needed to "make only a *prima facie* showing" of personal jurisdiction. *Adams*, 364 F.3d at 650; *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002). To determine whether DISH has met its burden, we "must accept as true [DISH's] uncontroverted allegations, and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219–20 (5th Cir. 2012) (second and third alteration in original) (citations omitted).

III

We first address the district court's application of Federal Rule of Civil Procedure 4(k)(2). The district court concluded that DISH could only satisfy personal jurisdiction by showing that Elahmad had sufficient connections with Texas. This was wrong. "Rule 4(k)(2) provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the *United States as a whole* sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state." *Adams*, 364 F.3d at 650 (emphasis added); Fed. R. Civ. P. 4(k)(2). As our en banc court recently explained, "[f]or federal claims filed in federal courts . . . the relevant minimum contacts are those with the *entire* United States, *not* a forum state." *Douglass*, 46 F.4th at 242 (emphases added).

Thus, the district court erred by failing to consider whether Elahmad had sufficient contacts with the United States to establish personal jurisdiction.

No. 23-20180

IV

We now turn to whether DISH made a prima facie showing of specific personal jurisdiction. DISH relies only on Rule 4(k)(2), which is a procedural rule that does not "expand[] the scope of a court's personal jurisdiction." *Id.* at 234. But DISH's properly served summons establishes personal jurisdiction under the rule if three conditions are satisfied: (1) DISH's claims arise under federal law; (2) Elahmad is not subject to the general jurisdiction of any other state; and (3) the exercise of jurisdiction is consistent with the Constitution and laws of the United States. *See* Fed. R. Civ. P. 4(k)(2).

DISH easily satisfies the first two prongs. Its claim for contributory copyright infringement arises under federal law. And although DISH must prove that Elahmad had the requisite contacts with the United States, it need not "negate jurisdiction in every state." *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018). As we have explained, "the burden to establish that there was a state meeting the criteria necessarily must fall on the defendant." *Id.* Elahmad did not appear before the district court and has not filed a brief in this court. He therefore has not shown that he is subject to another state's jurisdiction.

Whether DISH meets the last prong is a closer question. "In applying Rule 4(k)(2) [we] must determine whether the defendant has sufficient ties to the United States as a whole to satisfy constitutional due process concerns." *Adams*, 364 F.3d at 651. DISH relies only on specific personal jurisdiction. To establish this kind of jurisdiction, DISH first must show that Elahmad "purposefully avail[ed] [himself] of the privilege of conducting activities" in the United States. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Elahmad's contacts with the United States "must be [his] own choice and not random, isolated, or fortuitous. They must show

5

that [he] deliberately reached out beyond [his] home—by, for example, exploi[ting] a market in the forum State or entering a contractual relationship centered there." *Id.* (internal quotation marks and citations omitted). Importantly, DISH's claim against Elahmad must "arise out of or relate to" those contacts. *Id.* (citation omitted). And finally, DISH must show that "exercising our jurisdiction [would] be 'fair and reasonable' to [Elahmad]." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317–18 (5th Cir. 2021) (citations omitted).

A

We first consider whether Elahmad purposefully availed himself of the privilege of conducting activities in the United States, "look[ing] only to the contact[s] out of which the cause of action arises"—here, the operation of Elahmad's website. *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002).

DISH contends it has satisfied this prong because Elahmad profited from United States users through third-party advertising; made his website appeal to a United States audience by contracting with a California-based company to optimize the website's performance; referenced the DMCA on his website; targeted the United States through his social media advertising; and failed to limit United States users from accessing his website.

"[T]he analysis applicable to a case involving jurisdiction based on the Internet . . . should not be different at its most basic level from any other personal jurisdiction case." *Pervasive Software*, 688 F.3d at 226–27 (second alteration in original). That said, where, as here, a defendant's website is the basis for specific jurisdiction, our circuit applies the framework set out in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *See Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). Under *Zippo*, a defendant does not purposefully avail itself of the benefits and protections of the forum state if the website is passive, simply

"post[ing] information that people can see." *Johnson*, 21 F.4th at 318. Nor does "a defendant . . . have sufficient minimum contacts with a forum state just because its website is accessible there." *Admar Int'l*, 18 F.4th at 787. But if the defendant "'enters into contracts with residents of [the] foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet,'" *id.* at 786, or "the site interacts with its visitors, sending *and* receiving information from them, we must then apply our usual tests to determine whether the virtual contacts that give rise to the plaintiff's suit arise from the defendant's purposeful targeting of the forum state." *Johnson*, 21 F.4th at 318.

"At bottom, *Zippo* seeks to answer the question: Has the defendant targeted the forum state?" *Admar Int'l*, 18 F.4th at 786. Indeed, we have warned that "[a]lthough interactivity along the *Zippo* sliding scale can be an important factor . . . because it can provide evidence of purposeful conduct," we must still "focus[] on the nature and quality of online and offline contacts to demonstrate the requisite purposeful conduct that establishes personal jurisdiction." *Pervasive Software*, 688 F.3d at 227 n.7 (citation omitted).

DISH does not argue on appeal that the website is interactive. It argued to the district court that the website was interactive because Elahmad's website transmits computer files of television content to users who select from the website's electronic channel guide. But it has abandoned its interactivity argument on appeal. *See Moreno v. Sentinel Ins. Co.*, 35 F.4th 965, 974 n.8 (5th Cir. 2022).

Unlike our circuit's other website-based cases, however, DISH alleges other facts to show that Elahmad purposefully targeted the United States. DISH alleges that Elahmad contracted with various social media companies to promote his website in the United States. For example, on his Pinterest page, Elahmad advertises his website as a place to "watch Arab

channels in America." This type of direct advertising in the forum is relevant to whether the defendant solicited business in the form. *Cf. Admar*, 18 F.4th at 787; *Pervasive Software*, 688 F.3d at 228. DISH also alleges that Elahmad contracted with California-based Cloudflare, Inc., to conceal his IP address and to optimize the website's performance for United States users. According to DISH, "Cloudflare's service "cache[s] static assets across [the Cloudflare] network," which includes data centers in 39 U.S. cities, "and always directs end users to the closest data center, minimizing latency." In *GreatFence.com, Inc. v. Bailey*, we explained that the location of a "web server's location *alone*" does not "suffice[] to establish personal jurisdiction" "where there is no allegation, argument, or evidence that the defendants played any role in selecting the server's location—or that its location was selected with the purpose or intent of facilitating the defendants' business in the forum." 726 F. App'x 260, 261 (5th Cir. 2018) (emphasis added). But that's just what DISH alleges here. It argues that Elahmad purposefully chose Cloudflare to enhance the experience for United States users.

Although DISH relies heavily on the website's traffic and the fact that Elahmad profited from this traffic through third-party advertising, the advertising isn't what gives rise to DISH's claim—the streaming of DISH's channels on his website does. And based on our precedent, the fact that Elahmad used visitors' location data to tailor advertising to them is irrelevant. *See Johnson*, 21 F.4th at 318. As in *Johnson*, the advertisements do not relate to the claim, and "[t]he place from which a person visits [Elahmad's] site is entirely beyond [Elahmad's] control." *Id.* Indeed, these types of advertisements do not attract users to his site; they are only relevant to "those already visiting [his] site." *Id.* (emphasis omitted). Thus, they cannot be used to show that Elahmad purposefully targeted the United States. Nor can Elahmad's failure to restrict United States users from

accessing his website show that he was targeting the United States. Although one of our sister circuits has found such a failure relevant to a defendant's intent to serve the United States, *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 9 (1st Cir. 2018), on these facts, we do not think it shows that Elahmad "deliberately 'reached out beyond' [his] home." *Ford Motor Co.*, 592 U.S. at 362.

Nonetheless, we conclude that DISH has met its burden of proving a prima facie case of personal jurisdiction over Elahmad because he purposefully reached out beyond his home by advertising to United States users that his site was a place to "watch live Arabic tv" and that it had "Arab channels in America." And to ensure that his website performed optimally for United States users, he contracted with U.S.-based Cloudflare. These contacts are the means by which Elahmad has made DISH's copyrighted works accessible in the United States. Thus, DISH's copyright claim against Elahmad arises out of or relates to those contacts. In isolation, these contacts would be insufficient to prove personal jurisdiction. But taken together, and given that they relate to DISH's claim, we conclude they are sufficient, at least at this stage of the proceedings, to confer specific personal jurisdiction over Elahmad.

B

Finally, it is fair and reasonable for Elahmad to be subject to jurisdiction in the United States. We've concluded that DISH has met its prima facie burden, so the burden shifts to Elahmad to show that our exercise of jurisdiction would be unreasonable. To determine fairness, we look to: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social

policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

Given that he did not respond to this suit or file an appellate brief, Elahmad is unlikely to meet his burden to show that the exercise of jurisdiction would be unreasonable. DISH relies mostly on the second and third factors. It argues that jurisdiction over Elahmad is fair and reasonable because DISH is a United States company whose copyrights are limited to the United States, the infringement and harm occurred in the United States, and DISH's rights are protected by United States law. Thus, DISH argues, the United States has an interest in enforcing its laws, and it is unclear that any other forum would hear DISH's claim. We agree. What's more, the DMCA page on Elahmad's website suggests that he was expecting United States users and felt the need to explain the legality of his website under United States law—tellingly, it is the only country's law referenced on his website.

V

We conclude that DISH has established a prima facie case of personal jurisdiction over Elahmad and that the exercise of jurisdiction over him would be fair and reasonable. Accordingly, we REVERSE and REMAND to the district court for further proceedings on DISH's motion for default judgment.